UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

WENDY SHAPIRO,                                    Case No.

                Plaintiff,

v.                                                **COMPLAINT**

UNITEDHEALTHCARE SERVICE LLC,

                Defendant.

---------------------------------------------------------x

The plaintiff, WENDY SHAPIRO, by and through her attorneys, Hollis Laidlaw & Simon P.C., complaining of the defendant UNITEDHEALTHCARE SERVICE LLC, alleges as follows:

## NATURE OF THE ACTION

1. This is an action pursuant to Section 502(a)(1) of the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1132(a)(1), to redress the defendant's wrongful denial of benefits that plaintiff was entitled to receive under her health plan.

2. This action further seeks recovery on the basis of promissory estoppel in that the defendant made a clear and unambiguous promise to cover plaintiff's surgery, induced plaintiff's reasonable reliance on that promise, and then breached the promise causing plaintiff to actually and proximately suffer damages; violation of the Women's Health and Cancer Rights; and violation of NY Insurance Law § 4303(x)(1).

3. As set forth below, defendant denied plaintiff's claim without legitimate reason, sticking an unsuspecting plaintiff with a $48,000 medical bill to pay all on her own without defendant covering any portion thereof.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff is an individual residing in the Eastern District of New York, to wit: plaintiff resides in Roslyn Heights, in the County of Nassau and State of New York.

5. Upon information and belief, the defendant, UnitedHealthcare Service LLC, is a Delaware limited liability company.

6. Upon information and belief, on April 2, 2002, the defendant, UnitedHealthcare Service LLC, filed an Application of Authority with the New York State Department of State, registering to do business as a foreign limited liability company in the State of New York.

7. Upon information and belief, the defendant UnitedHealthcare Service, LLC registered as a foreign limited liability with the State of New York in the County of Suffolk, within the Eastern District of New York.

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policy at issue was provided through the employer of plaintiff's spouse and is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.

9. Plaintiff has exhausted all administrative remedies prior to the commencement of this action.

## FACTUAL BACKGROUND

*A. The Plan*

10. At all times relevant herein, plaintiff's husband was employed by NYU Grossman School of Medicine.

11. During the same time period, plaintiff was a "participant" as that term is defined under 29 U.S.C. § 1002 of an employer-sponsored health plan (the "Plan") in connection with her husband's employment at NYU Grossman School of Medicine.

12. The Plan in which plaintiff was (and is) a participant is known as the NYU Langone Health UnitedHealthcare Plus Plan, Group ID: 218640, effective January 1, 2021.

13. At all times relevant herein, the defendant served as the healthcare claims administrator for the Plan.

**B.     The Procedure**

14. In 2001, plaintiff underwent a bilateral mastectomy for breast cancer with reconstructive surgery for placement of bilateral textured implants.

15. In 2020, the implants were recalled by the manufacturer, Allergan, after a request was made by the Food and Drug Administration.

16. In 2021, plaintiff consulted with Dr. Lyle Leipziger, the physician who performed her surgery in 2001.

17. As a result of consultations with plaintiff's primary care physician and Dr. Leipziger, and after considering her blood test results and overall state of health, plaintiff's physicians made a clinical decision and recommendation that she have surgery to swap out the 21-year old textured implants for safer non-textured implants.

18. Plaintiff elected to have Dr. Leipziger perform the procedure since he performed the original surgery and because, if the textured implants caused a reaction resulting in malignancy, the surgeon must—at the time of the procedure—decide whether to do a more complex procedure that involves removing the capsule that forms around the implant.

19. Dr. Leipziger is the chief of breast surgery at Northwell Health and had the expertise to make the correct decisions for plaintiff's care.

### C. Defendant Confirms Coverage for the Procedure

20. Plaintiff was aware that Dr. Leipziger was out-of-network, but the Plan provides for that additional coverage, which plaintiff's husband pays for.

21. On October 18, 2021, the defendant responded in writing to a request to confirm coverage of the procedure through which plaintiff's implants would be replaced.

22. In its letter, defendant notified plaintiff that, "Based on the information we received from your provider, the service requested is *covered by your plan*." (*emphasis added*)

23. Moreover, at the top of defendant's letter is the notation in an enlarged typeface font: "APPROVED: Service requested is covered for your plan."

24. The letter continues to describe the "Member name" as plaintiff; the "Provider" as Lyle Leipziger; the "Facility" as Long Island Jewish Medical Center; and the "Services approved" which describes the procedure codes and procedure descriptions for the replacement of the breast implants.

### D. The Procedure is Performed

25. On October 20, 2021, plaintiff underwent the procedure to have her implants replaced.

26. The procedure was performed by Dr. Leipziger at Long Island Jewish Medical Center.

### E. The Denial of Benefits

27. On or about November 6, 2021, Dr. Leipziger submitted a claim for $48,000 to the defendant.

28. On November 17, 2021, defendant "opened a ticket" for the claim request.

29. On January 6, 2022, Northwell Health for Long Island Jewish Medical Center sent a bill for Dr. Leipziger's services to the plaintiff in the amount of $48,000.

30. On February 16, 2022, defendant sent Dr. Leipziger a letter to advise that it was still reviewing the claim.

31. On March 16, 2022, Dr. Leipziger was advised that the claim was denied, and on March 24, 2022, defendant sent plaintiff an Explanation of Benefits/Claim Summary.

32. In that claims summary, defendant indicated that the amount billed for the October 21, 2021 surgery was $48,000, that plaintiff's deductible was $2,246.79, and that the remaining balance of $45,753.21 was "Non-Covered."

33. As a result, the Explanation of Benefits/Claim Summary concluded that plaintiff owed the entire $48,000 billed for the October 21, 2021 surgery.

34. On April 21, 2022, plaintiff paid the deductible of $2,246.79 to Long Island Jewish Medical Center and appealed the denial of benefits by the defendant.

35. On April 24, 2022, defendant acknowledged it received a request for review of its previous benefit decision

36. On April 26, 2022, defendant determined that the request for payment was "processed correctly."

37. The reason provided by defendant was that "Current Procedural Terminology (CPT) and Healthcare Common Procedure Coding System (HCPCS) codes on the UnitedHealthcare Bilateral Eligible Procedures Policy List describe unilateral procedures that can be performed on both sides of the body during the same session by the Same Individual Physician . . . CPT or HCPCS codes with bilateral in their intent or with bilateral written in their

5

description should not be reported with the bilateral modifier . . . . We are required to process claims according to the information submitted by the provider of service . . .  We are also required to use the procedure and diagnosis codes submitted on the claim. If any of the information on the claim is incorrect, a corrected bill must be submitted for consideration."

38. However, a review of the claim shows that Dr. Leipziger submitted the claim with the same exact procedure codes that were approved by the defendant on October 18, 2021.

39. On May 16, 2022, plaintiff submitted a second-level appeal to the defendant.

40. On July 28, 2022, the defendant denied plaintiff's appeal, issuing its determination with a completely different explanation for its denial of benefits.

41. Specifically, defendant determined that Dr. Leipziger's services were covered at 50% of eligible expenses, but only after plaintiff meets her deductible. Defendant then erroneously concluded the deductible was not met when the claim was processed.

42. However, the plaintiff had paid Dr. Leipziger the deductible that was reported to her when she received her Explanation of Benefits/Claim Summary in April, 2022.

43. Because the defendant erroneously concluded the deductible was not paid, the defendant therefore determined that the claim was properly processed and the decision would be unchanged.

44. Thereafter, plaintiff filed a third-level appeal of the denial of benefits.

45. On August 17, 2022, plaintiff was informed by an appeals specialist by email that her claim was denied and that she would be receiving a decision letter.

46. However, to date, no decision letter has been received by plaintiff and it is not known what position is taken as to why her request for payment of benefits has been denied for a third time.

47. Section 6 of the Plan provides that Non-Network coverage for Physician Fees for Surgical and Medical Services is "50% after you meet the Annual Deductible."

## COUNT ONE

### RECOVERY OF BENEFITS
### PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

48. Plaintiff repeats and re-alleges paragraphs 1 through 47 as if fully repeated and set forth herein.

49. ERISA provides a cause of action for a beneficiary or participant seeking payment under a benefits plan at 29 U.S.C. § 1132(a).

50. Plaintiff, as a participant in the Plan at the time her surgery was performed, has standing to seek such relief.

51. More specifically, a participant, such as plaintiff, may bring a civil action, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See,* 29 U.S.C. § 1132(a)(1)(B).

52. Plaintiff duly applied for a coverage determination prior to undergoing her surgery.

53. Prior to undergoing her surgery, defendant notified plaintiff by letter that her health provider's services would be covered under the Plan

54. In reliance on that coverage determination, plaintiff elected to undergo the surgery with the understanding that a substantial portion of the financial burdens of the procedure would be covered by her health insurer.

55. Plaintiff's reliance on defendant's notice of coverage approval was reasonable

7

under the circumstances.

56. The notice of coverage approval, as written, was clear and unequivocal.

57. The notice of coverage approval induced plaintiff's reliance thereon.

58. Any ambiguity in the coverage approval letter must be construed against the defendant who drafted it.

59. Defendant's denial of plaintiff's claim based on "incorrect codes" used by her provider in submitting the claim was arbitrary and capricious given that defendant had already expressly approved the procedure codes in its notice of coverage approval.

60. Defendant's denial of plaintiff's claim based upon the assertion that her deductible had not been met was likewise arbitrary and capricious in that (a) defendant did not notify plaintiff what the amount of the deductible was until it first denied her claim and stated what the amount was to be paid; and (b) plaintiff promptly paid her provider the amount of that deductible once she was notified of the amount.

61. Plaintiff has exhausted all internal appeals and review processes required under the Plan.

62. Based on the foregoing, defendant is responsible under the plan to pay plaintiff or her provider, Dr. Leipziger/Long Island Jewish Medical Center, 50% of the cost of the procedure after the deductible, i.e., 50% of 45,753.21 or $22,876.60.

## COUNT TWO

## PROMISSORY ESTOPPEL

63. Plaintiff repeats and re-alleges paragraphs 1 through 62 as if fully repeated and set forth herein.

64. Defendant's letter approving coverage under the Plan was a clear and

unambiguous promise made to the plaintiff.

65. Defendant's letter induced reasonable and foreseeable reliance by plaintiff.

66. In reliance on defendant's coverage approval letter, plaintiff elected to undergo her surgery with the understanding that a substantial portion of the cost of her health provider's services would be covered under the Plan and processed for payment by defendant, as the claims administrator.

67. After plaintiff's surgery, defendant breached its promise.

68. As a result of defendant's breach, plaintiff has been left with a medical bill in excess of $45,000.

69. Equity and fairness require that defendant's promise be enforced by this Honorable Court.

## COUNT THREE

## WOMEN'S HEALTH AND CANCER RIGHTS ACT OF 1998

70. Plaintiff repeats and re-alleges paragraphs 1 through 69 as if fully repeated and set forth herein.

71. The Women's Health and Cancer Rights Act of 1998 (WHCRA), codified at 29 U.S.C. § 1185b) provides that a group health plan, and a health insurance issuer providing health insurance coverage in connection with a group health plan, that provides medical and surgical benefits in connection with a mastectomy *shall provide* breast reconstruction in connection with such mastectomy coverage for (1) all stages of reconstruction of the breast on which the mastectomy has been performed; surgery and reconstruction of the other breast to produce a symmetrical appearance; and (3) prostheses and physical complications of mastectomy, including lymphedema; in a manner determined in consultation with the attending physician and

patient.

72. The WHCRA further provides that a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group plan, may not penalize or otherwise reduce or limit the reimbursement of an attending provider.

73. The Schedule of Benefits in the Plan covers physician fees for surgical and medical services, and reconstructive procedures, among other covered services.

74. As a result, since the Plan would provide mastectomy coverage and benefits, it must also provide coverage for all stages of breast reconstruction, including prostheses and physical complications of mastectomy.

75. Plaintiff's original implants are prostheses covered under the WHCRA.

76. Plaintiff's replacement implants are prostheses covered under the WHCRA.

77. It was clinically determined by plaintiff's provider, in consultation with the plaintiff, that the textured implants used in her post-mastectomy reconstructive surgery required replacement.

78. In 2020, the implants were recalled by the manufacturer, Allergan, after a request was made by the Food and Drug Administration.

79. It was clinically determined that based on plaintiff's tests, the recall of the original implants, and the age of the original implants, that there were physical complications from the original procedure or likely to be complications that could be prevented or mitigated by replacing the original implants.

80. As a result, plaintiff is entitled under the WHCRA to coverage under the Plan for the procedure to replace her implants performed on October 20, 2021, subject to the Plan's rules for co-payments and the payment of any deductible.

81. Defendant has failed and refused to provide any benefits in connection with the October 20, 2021 surgical procedure in derogation of the WHCRA.

82. As a result thereof, plaintiff has suffered damages.

## COUNT FOUR

### NEW YORK INSURANCE LAW § 4303(x)(1)

83. Plaintiff repeats and re-alleges paragraphs 1 through 82 as if fully repeated and set forth herein.

84. New York Insurance Law § 4303(x)(1) provides that every contract issued by a medical expense indemnity corporation, hospital service corporation or health service corporation which provides coverage for surgical or medical care shall provide coverage for breast reconstruction surgery after a mastectomy or partial mastectomy including all stages of reconstruction.

85. New York Insurance Law § 4303(x)(1) further provides that a medical expense indemnity corporation, hospital service corporation or health service corporation shall not deny a covered person eligibility to avoid compliance with this section, or penalize, reduce or limit the compensation of a health care practitioner for recommending or providing care in accordance with this section.

86. The Schedule of Benefits in the Plan covers physician fees for surgical and medical services, and reconstructive procedures, among other covered services.

87. As a result, since the Plan would provide mastectomy coverage and benefits, it must also provide coverage for all stages of breast reconstruction pursuant to New York Insurance Law § 4303(x)(1).

88. It was clinically determined by plaintiff's provider, in consultation with the

plaintiff, that the textured implants used in her post-mastectomy reconstructive surgery required replacement.

89. In 2020, the implants were recalled by the manufacturer, Allergan, after a request was made by the Food and Drug Administration.

90. It was clinically determined that based on plaintiff's tests, the recall of the original implants, and the age of the original implants, that there were physical complications from the original procedure or likely to be complications that could be prevented or mitigated by replacing the original implants.

91. As a result, plaintiff is entitled under New York Insurance Law to coverage under the Plan for the procedure to replace her implants performed on October 20, 2021, subject to the Plan's rules for co-payments and the payment of any deductible.

92. Defendant has failed and refused to provide any benefits in connection with the October 20, 2021 surgical procedure in derogation of the New York Insurance Law.

93. As a result thereof, plaintiff has suffered damages.

**WHEREFORE,** plaintiff respectfully demands judgment in her favor, and against defendant as follows:

(i) On Count One, pursuant to 29 U.S.C. § 1132(a)(1)(B), recovery of benefits in the amount of $22,876.60 or such other amount as this Honorable Court deems just and proper in accordance with the facts and circumstances of this case, the promises made, and pursuant to the Plan;

(ii) On Count Two, by reason of the plaintiff's detrimental reliance on the promises of the defendant, judgment in the amount of $22,876.60;

(iii) On Count Three, pursuant to 29 U.S.C. § 1185b, recovery of benefits in the amount of $22,876.60 or such other amount as this Honorable Court deems just and proper in accordance with the facts and circumstances of this case;

(iv) On Count Four, pursuant to New York Insurance Law § 4303(x)(1), recovery of benefits in the amount of $22,876.60 or such other amount as this Honorable

    Court deems just and proper in accordance with the facts and circumstances of this case; and

(v)  Such other and further relief as this Honorable Court deems just, equitable and proper.

Dated: Mount Kisco, New York
   October 3, 2022

              Yours, etc.

              **HOLLIS LAIDLAW & SIMON P.C.**

       By:  s/David Simon_____
           David Simon
           55 Smith Avenue
           Mount Kisco, New York 10549
           (914) 666-5600
           dsimon@hollislaidlaw.com

           *Attorneys for Plaintiff*